## WEBSTER v. SHAWNEE-TECUMSEH TRACTION CO.

No. 8574—Opinion Filed Feb. 12, 1918.

(170 Pac. 1167.) ·

### Appeal and Error—Trial—Review—Harmless Error—Instructions—Issues.

(a) "The instructions of the court should be based upon issues as made by the pleadings and evidence, and should present the respective theories of the parties in accordance with the testimony offered in support thereof." C., R. I. & P. Ry. Co. v. Pitchford, 44 Okla. 199, 143 Pac. 1146.

(b) An instruction which withdraws from the consideration of the jury a theory of a party properly presented under the issues formed by the pleadings and the evidence is prejudicially erroneous.

(Syllabus by Bleakmore, C.)

Error from Superior Court, Pottawatomie County: Leander G. Pitman, Judge.

Action by Laura Webster against the Shawnee-Tecumseh Traction Company. Verdict and judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

H. H. Smith and I. C Saunders, for plaintiff in error.

G. C. Abernathy and Edward Howell, for defendant in error.

Opinion by BLEAKMORE, C. This is an action for personal injuries commenced in the superior court of Pottawatomie county by Laura Webster against the Shawnee-Tecumseh Traction Company. Upon trial to a jury there was verdict and judgment for defendant, and plaintiff has appealed.

In the petition it is alleged, in substance, that on the occasion in question defendant was engaged in the business of operating a street railway in the city of Shawnee; that plaintiff, in a buggy drawn by a horse, was traveling along a street when one of defendant's cars, which was being run at a rapid and unreasonable rate of speed, and in excess of that prescribed by, and in violation of an ordinance of said city, collided with the buggy, and thus severely and permanently injured her; that defendant's motorman saw that the horse drawing the buggy was becoming frightened by the speed of the car, but that—

"notwithstanding the peril of this plaintiff, the defendant's motorman continued to operate said car at a careless, negligent, and rapid rate of speed, and made no effort to stop or control said car, but continued to operate the same, notwithstanding the perilous condition of this plaintiff, until the same struck the buggy, in which this plaintiff was riding, and precipitated her to the street, dragging her about 20 feet, inflicting the injuries complained of," etc.

Defendant answered by the way of general denial, and also with great particularity pleaded that plaintiff's injuries, if any, were caused by her own negligence. The evidence tended to establish that the collision occurred on one of the principal business streets of the city. An ordinance of the city of Shawnee, limiting the speed of street cars on such streets to 8 miles an hour, was introduced.

Plaintiff's brother testified that he was in the buggy with her, driving east along Main street; that he saw the street car coming toward them; that when the car was about 100 or 120 feet distant the horse began to shy and back away; that the car was running approximately 10 miles an hour; that he did not notice it slacken speed; that the horse backed about 20 feet and cut the buggy into the car, that portion of the car between the step and front striking the buggy; that the plaintiff fell under the buggy; that after striking it, the car carried the buggy some 20 feet, and ran about 45 feet before stopping.

Another witness to the occurrence testified:

"He was driving along at an average good lick anybody would I suppose, about halfway between the car track and the curb, and the car was coming, and the horse became frightened, as the car approached and shied; kind of shied towards the curb, and as the car came nearer he got worse frightened, and backed the buggy into the car. Q. About how far was the car away from the buggy when the horse commenced to act bad up there? A. Well, the best I remember, about two car lengths or a little better; I would not say positive, because it has been quite a while."

Whether the car was being operated at an unlawful speed, and, if so, whether the fright of the horse was caused by its running in violation of the ordinance, and whether the motorman could have stopped his car by exercise of reasonable care in time to have avoided plaintiff's injuries had it not been running at a speed in violation of the ordinance were all questions within the issues presented by both the pleadings and the evidence. Plaintiff requested the court to instruct the jury upon this phase of the case; and, while the instruction requested was properly refused as being technically inaccurate, it was perhaps sufficient to direct attention to her theory. The court not only refrained from anywhere charging the jury upon such issues, but instructed as follows:

"You are instructed that under the pleadings and the proof in this case there is only one question for the jury to determine on the question of negligence. The motorman in charge of defendant's car at the time of the accident testifies that he saw and observed the horse and the buggy in which plaintiff was driving, when he was approaching the point of the accident and about 350 feet distant from said point, and constantly watched the said horse up to the time and to the point of the accident, while the plaintiff contends that the horse was only about 100 feet more or less from said approaching car when the horse first showed appearances of fright, as the plaintiff contends. You are instructed that if you find and believe by a preponderance of the evidence in this case that the defendant's car did strike the plaintiff's buggy as plaintiff contends, and that plaintiff's injuries resulted therefrom as a proximate result, and that at the time immediately preceding the accident complained of, the actions and appearances of the horse which plaintiff's brother was driving, together with the attendant circumstances, were such as to lead a man of reasonable prudence to believe that an accident was imminent, and that after such time as it reasonably appeared that an accident was iminent, if you find it so appeared, the defendant's motorman by the use of ordinary care could have stopped said car and avoid-ed the accident, and said motorman failed to use such care, and as a proximate result of such failure the plaintiff was injured, then and if you so find, your verdict should be for plaintiff."

It is urged on behalf of the plaintiff that the giving of such instruction eliminating from consideration a theory based upon issues presented by both the pleadings and evidence amounted to a misdirection of the jury, and constituted prejudicial error. With this contention we are constrained to agree.

A concrete statement of one feature of the law of the instant case, which under the issues might have been submitted to the jury, is found in Chickasha St. Ry. Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172, wherein it is said:

"Taken together, said instructions fairly tell the jury that, aside from the speed of the car, if plaintiff's negligence placed him in such dangerous proximity to the approaching car that, after the danger to him was discovered, it could not be stopped by the exercise of reasonable care in time to avoid the injury, defendant was not liable; but if they found that after he was discovered the motorman could have stopped the car, by the exercise of such care, in time to have avoided the injury, had it not been running at a speed in violation of the ordinance, the defendant was liable. This is the law."

In Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94, it is held:

"The instructions of the court should be based upon the issues as made by the pleadings and the evidence, and should present the respective theories of the parties in accordance with the testimony offered in support thereof."

In O., R. I. & P. Ry. Co. v. Pitchford, 44 Okla. 199, 143 Pac. 1147. it is said:

"In an action for damages for personal injuries, where the defense of contributory negligence is interposed, and there is testimony fairly tending to establish such defense, instructions which wholly leave out of view the question of plaintiff's contributory negligence, and under which the jury, if found certain facts to exist, would be bound to find for the plaintiff, although they might also believe the plaintiff by her negligence contributed directly to the accident are erroneous and constitute reversible error."

In the body of the opinion it is stated:

"The instruction nowhere submitted the defendant company's defense of contributory negligence, but, on the other hand, told the jury unconditionally to find for the plaintiff if they found she was injured while in the act of alighting from the train, and that such injury was caused either by

the act of the company in starting the train or in its brakeman jerking or pulling her from the train. The question is not one of a failure or omission by the court properly to charge upon this point, or, in other words, of nondirection. If such were the objection to this instruction, the plaintiff in error, unless it had in apt time, and as provided by statute, requested the submission of a correct instruction, would not be in a position to assert that error was committed. Huff v. Territory, 15 Okla. 376, 85 Pac. 241; First Nat. Bank v. Tevis, 29 Okla. 714, 119 Pac. 218; Chicago, R. I. & P. Ry. Co. v. Baroni, 32 Okla. 540, 112 Pac. 926; Chicago, R. I. & P. Ry. Co. v. Radford, 36 Okla. 657, 129 Pac. 834. The mistake here, however, is one of misdirection, in that the court erroneously charged what the issues were, as made by the evidence, which necessarily misled the jury as to what they were to determine. It in effect took from the jury the defense of contributory negligence, as it told them that, if they found defendant did one of two things, while plaintiff was getting off the coach, and was thereby injured, they should find for plaintiff, without regard to whether the plaintiff by her own negligence directly contributed to the accident or not. This was palpable error."

It seems clear that an instruction which wholly withdraws from the consideration of the jury a theory of a party, properly presented under the issues formed by the pleadings and evidence, is a misdirection of the jury, and prejudicially erroneous.

Because of the error in instructing the jury as above set forth, the judgment should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.