MILES BROTT, as Executor of EVIE J. BROTT, Deceased, Appellant, *v.* AUBURN AND SYRACUSE ELECTRIC RAILROAD COMPANY, Respondent.

Railroads — negligence — contributory negligence — fatal injuries to prospective passenger about to board interurban trolley car — negligence of railroad company and contributory negligence of plaintiff's intestate questions for the jury.

This is an action to recover for the death of plaintiff's testatrix, killed by a trolley car. One of defendant's way stations is where the railroad crosses a highway at grade, and its cars stop only on signal. On the north side of its tracks the defendant has erected a shelter for its passengers, and persons who intend to take an east-bound car are compelled to cross from this shelter over both of the railroad tracks and enter the car on the southerly side of the tracks, near a white pole erected by defendant to show where the cars should be stopped to receive and discharge passengers. When an east-bound car was approaching and was about three hundred feet from the shelter, decedent came out of the building with a suitcase in her hand and started across the tracks toward the white pole. She was instantly killed by this car as she was stepping from the southerly track and when another step would have taken her out of danger. No effort was made to stop the car until it was too late to stop at the white pole, in accordance with the custom and practice that the defendant had adopted. The jury could have found that the motorman either saw the decedent or should have seen her in time to stop his car at the regular stopping place. Her appearance and the fact that she carried a suitcase were evidence that she desired to become a passenger on the car. *Held,* that the defendant owed a duty of care to ascertain whether she desired to become a passenger, and it also owed her a duty of care because she was such intending passenger, and that, therefore, defendant's negligence was a question for the jury. *Held, further,* that the weight to be given the fact that the testatrix had a right to assume that the defendant's car would stop by the white post, to enable her to take it as a passenger, should be determined by a jury and not by the court. (Code Civ. Pro. § 841b.)

*Brott* v. *Auburn & Syracuse El. R. R. Co.*, 169 App. Div. 913, reversed.

(Argued January 17, 1917; decided February 9, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 21, 1915, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term in an action to recover for the death of plaintiff's testatrix alleged to have been occasioned through the negligence of defendant.

The facts, so far as material, are stated in the opinion.

*A. Lee Olmsted* for appellant. The defendant was guilty of negligence. (*Blaisdell* v. *Long Island R. R. Co.,* 152 App. Div. 220; *Exton* v. *Central R. R. Co. of N. J.,* 62 N. J. L. 7; *Payne* v. *Binghamton Ry. Co.,* 156 App. Div. 1; *Mullen* v. *Schenectady Ry. Co.,* 214 N. Y. 300.) The nonsuit was improperly granted upon the ground of the contributory negligence of the plaintiff's testatrix. (*Sackheim* v. *Pigueron,* 215 N. Y. 62; *Cranch* v. *B. H. R. R. Co.,* 186 N. Y. 319; *Parsons* v. *N. Y. C. & H. R. R. R. Co.,* 113 N. Y. 355; *Terry* v. *Jewett,* 78 N. Y. 338; *Brassell* v. *N. Y. C. & H. R. R. R. Co.,* 84 N. Y. 241; *Smith* v. *N. Y. C. & H. R. R. R. Co.,* 177 N. Y. 224; *Woodworth* v. *N. Y. C. & H. R. R. R. Co.,* 55 App. Div. 23; 170 N. Y. 589; *Massoth* v. *D. & H. C. Co.,* 64 N. Y. 527; *McCaffrey* v. *B. & O. R. R. Co.,* 201 N. Y. 115; *Lent* v. *N. Y. C. & H. R. R. R. Co.,* 120 N. Y. 473.)

*Ernest I. Edgcomb* and *William Nottingham* for respondent. There is no evidence from which the jury could say that the defendant was guilty of any negligence which caused this accident. (*Stierle* v. *Union R. Co.,* 156 N. Y. 70, 684; *Palmer* v. *Pennsylvania R. R. Co.,* 111 N. Y. 488; *Palmer* v. *D. & H. C. Co.,* 120 N. Y. 170; *Morris* v. *N. Y. C. & H. R. R. R. Co.,* 106 N. Y. 678; *Kelly* v. *Manhattan Ry. Co.,* 112 N. Y. 443; *Endres* v. *International Ry. Co.,* 129 App. Div. 785; *Kozlowski* v. *R., S. & E. R. R. Co.,* 142 App. Div. 245;

*Orafina* v. *N. Y. State Rys.*, 148 App. Div. 417; *Young* v. *Erie R. R. Co.*, 158 App. Div. 14; *Phelps* v. *Erie R. R. Co.*, 134 App. Div. 720.) The nonsuit should be sustained upon the ground of the contributory negligence of deceased. Plaintiff's own evidence shows her to have been guilty of contributory negligence as a matter of law. No other inference is permissible from the evidence. (*Wilds* v. *H. R. R. R.. Co.*, 29 N. Y. 315; *Von Atzinger* v. *N. Y. C. & H. R. R. R. Co.*, 83 Hun, 120; *Steves* v. *O. & S. R. R. Co.*, 18 N. Y. 422; *Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 455; *Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 369; *Strickland* v. *N. Y. C. & H. R. R. R. Co.*, 88 App. Div. 357; *Getman* v. *D., L. & W. R. R. Co.*, 162 N. Y. 21; *Legg* v. *Erie R. R. Co.*, 141 App. Div. 876; 206 N. Y. 665; *May* v. *N. Y. C. & H. R. R. R. Co.*, 137 App. Div. 7; *Wahler* v. *Long Island R. R. Co.*, 137 App. Div. 17.)

Chase, J. The defendant operates a double-track electric railroad on private right of way between Syracuse and Auburn. The railroad runs substantially east and west and crosses numerous public highways at grade. A way station known as Seymour's Crossing is at a public highway which the railroad crosses nearly at right angles. Many people are carried by the defendant to and from that station, but its cars only stop there on signal. On the north side of its tracks at that station and on the east side of the beaten part of the highway the defendant has erected a platform about sixteen feet square, and in connection therewith an octagonal building about eleven feet in diameter as a shelter for its passengers. Persons who take one of the defendant's cars that run easterly from Seymour's Crossing are compelled to cross from the shelter over both of its tracks and enter such car from the southerly side.

The plaintiff's testatrix on the 6th of March, 1913, started from a hamlet about six miles south of Seymour's

Crossing for Syracuse, intending to take one of the defendant's cars at Seymour's Crossing. She was driven to Seymour's Crossing and arrived there a few minutes before ten o'clock. She left the sleigh in which she had been riding and entered the shelter, carrying a suitcase. The day was cold and there was snow on the ground and in the air, and the wind was blowing a gale. The man with whom she had been riding drove northerly about two hundred feet beyond the railroad when he heard the whistle of an approaching car from the west. He saw the car and it was then about 1,000 feet from him. He then looked to the shelter and through the window saw the testatrix picking up her clothing and suitcase. He did not see her again. He heard short blasts of the car whistle when it was near the cattle guard, immediately west of the highway, but his attention being taken by his horses he did not see what occurred thereafter. One of the passengers in the car testified that when the car was about three hundred feet from the shelter he saw the testatrix come out of it with a suitcase in her hand and start diagonally across the tracks. The car was running from twenty-five to thirty miles an hour, and its speed was not reduced until after it had passed the cattle guard. When it reached the westerly cattle guard the short blasts of the whistle were given, and they were followed by the jar occasioned by setting the brakes when the car reached the center of the highway and by the collision with the testatrix, which occurred at about the easterly cattle guard.

The testatrix was instantly killed as she was stepping from the southerly track and when another step would have taken her out of danger. Her body was thrown to a point on the south side of the tracks about eighteen feet east of the cattle guard. The car did not come to a stop until it had passed from one hundred and twenty-five to two hundred feet east of the easterly cattle guard. That cattle guard was about eleven feet east of the platform.

Although Seymour's Crossing is not a regular stopping place for the defendant's cars, its local cars, of which the car in question was one, stopped there on signal. No particular kind of signal was required. The raising of a hand or any other motion or act indicating a desire to take passage on the car was deemed sufficient. The defendant had erected a white pole on the south side of the tracks immediately west of the easterly cattle guard as the place where cars after receiving a signal should be stopped so as to bring the steps of the car to be used by passengers in boarding it at the east side of the highway. It was the duty of the defendant upon signal to stop its local cars.

The car in question, under the circumstances disclosed, could have been stopped within three hundred feet. It was in fact stopped in less than that distance. No effort whatever was made to stop the car until after the danger signal was given and until it was too late to stop the car in accordance with the custom and practice that the defendant had adopted. The jury could have found that the motorman either saw the testatrix or should have seen her in time to stop his car at the regular stopping place. Her appearance and the fact that she carried a suitcase were evidence that she desired to become a passenger on the car. The defendant's negligence was a question of fact for the jury.

Was the testatrix guilty of contributory negligence as a matter of law ? She had a right to assume not only that the car would be stopped, but that it would be stopped with its front end at the white post. Every act of hers must be considered in connection with her proper and legitimate assumption that the car would be stopped at the place provided by the defendant to receive passengers. It is plain that she knew the car was coming. She was an intending passenger, who had entered the shelter provided for her by the defendant. When, with her suitcase in her hand, she went out of the shelter she doubtless assumed, as

she had a right to assume, that the motorman would see her and know that she desired to become a passenger. The defendant owed a duty of care to ascertain whether the testatrix desired to become a passenger on its car, and it also owed her a duty of care because she was such intending passenger. It was for the jury to say, therefore, whether she was guilty of contributory negligence in starting to cross the tracks, a distance of but little more than twenty feet, to get to the place where it was necessary for her to go, either in front or behind the car, to become a passenger thereon. Snow was on the ground, drifted and packed by the wind — there was no pathway across the tracks to guide her steps — her wrap and skirt were blown about her person while she was driven by the wind in a southeasterly direction. All of these facts, together with the further fact of her possible confusion arising from the severe wind and driven snow, must be taken into consideration in connection with the fact that she assumed that the car would be stopped before it reached the white post, in determining whether she should be charged with negligence as a matter of law in continuing her effort to cross the tracks in front of the approaching car.

The burden of proving contributory negligence was upon the defendant. (Code of Civil Procedure, § 841-b.)

We have recently held that less evidence is required to determine an intestate's freedom from contributory negligence than would be necessary if he were alive and able to testify, and also that where a person crosses tracks ahead of a car, to reach a point where he could board it, all of the circumstances, including the fact that he had a right to assume that the car would be stopped to receive him as a passenger, should be taken into account in determining whether he was guilty of contributory negligence in so passing in front of the approaching car. (*Mullen* v. *Schenectady Railway Co.*, 214 N. Y. 300, 306.) In that case the car was running forty-five or fifty miles an

7

hour, and we said: "If the deceased looked just before he attempted to cross the west-bound track, when the car must have been over two hundred feet away, he might well have supposed that he incurred no risk in crossing."

The weight to be given the fact that the testatrix had a right to assume that the defendant's car would be stopped by the white post, to enable her to take it as a passenger, should be determined by a jury and not by the court.

The judgment should be reversed and a new trial granted, with costs to abide the event.

COLLIN, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur; HISCOCK, Ch. J., not voting.

Judgment reversed, etc.